## EPTON *v.* NEW YORK.

No. 502, Misc.   Decided January 22, 1968.*

*Eleanor Jackson Piel* for petitioner in No. 502, Misc., and for appellant in No. 771, Misc.

*Frank S. Hogan, H. Richard Uviller* and *Michael Juviler* for respondent in No. 502, Misc., and for appellee in No. 771, Misc.

PER CURIAM.

The petition for a writ of certiorari is denied in No. 502, Misc.   The motion to dismiss is granted in No. 771, Misc., and the appeal is dismissed for want of a substantial federal question.

MR. JUSTICE STEWART, concurring in the denial of certiorari and the dismissal of the appeal.

I join the denial of certiorari in No. 502, Misc., and the dismissal of the related appeal in No. 771, Misc., but only because Epton has been sentenced to serve three concurrent one-year terms: one for conspiring to riot, New York Penal Law (1944 and 1966 Cum. Supp.), §§ 580, 2090; one for advocating criminal anarchy, §§ 160, 161; and one for conspiring to engage in such advocacy, §§ 580, 160, 161.   I think the riot conviction presents no substantial federal question,† and since the three sen-

---

*Together with No. 771, Misc., *Epton* v. *New York,* on appeal from the same court.

†It is true that some of the acts relied upon by the State to establish the existence of a conspiracy to riot consisted of speeches

tences were ordered to run concurrently, I conclude that these cases do not require the Court to consider either the criminal anarchy conviction or the associated conspiracy conviction. See *Hirabayashi* v. *United States,* 320 U. S. 81, 85; *Lanza* v. *New York,* 370 U. S. 139. If the constitutionality of New York's criminal anarchy laws were properly presented, however, I would vote to grant the petition for certiorari and note probable jurisdiction of the appeal, to reconsider the Court's decision in *Gitlow* v. *New York,* 268 U. S. 652, and to decide whether the New York anarchy statutes, either on their face or as applied in these cases, violate the First and Fourteenth Amendments.

MR. JUSTICE DOUGLAS, dissenting.

I would hear argument in these cases, since I am of the opinion that all questions presented, including those under the first count of the indictment for conspiring to riot, present substantial federal questions.

In the first count, the State alleged the commission of 15 overt acts by Epton in furtherance of the alleged conspiracy to riot. The alleged acts consisted in part of speeches made by Epton and his participation in the preparation and distribution of certain leaflets. Such activities, of course, are normally given the protection of the First Amendment with exceptions not now

made by Epton. Like my Brother DOUGLAS, I think it is at least arguable that a State cannot convict a man of criminal conspiracy without first demonstrating some constitutionally unprotected overt act in furtherance of the alleged unlawful agreement. But the State in these cases presented proof that Epton had actively participated in the formation of a group dedicated to armed revolt against the police under the direction of "block captains" and with the assistance of "terrorist bands," equipped with Molotov cocktails that Epton himself had explained how to use. In the context of this record, activities such as these can make no serious claim to constitutional protection.

necessary to state. See *Yates* v. *United States,* 354 U. S. 298; *Dennis* v. *United States,* 341 U. S. 494; *Terminiello* v. *Chicago,* 337 U. S. 1; *Thomas* v. *Collins,* 323 U. S. 516; *Bridges* v. *California,* 314 U. S. 252; *Gitlow* v. *New York,* 268 U. S. 652, 672 (dissenting opinion); *Abrams* v. *United States,* 250 U. S. 616, 624 (dissenting opinion); *Schenck* v. *United States,* 249 U. S. 47; *Chaplinsky* v. *New Hampshire,* 315 U. S. 568; *Feiner* v. *New York,* 340 U. S. 315, 329 (dissenting opinion).

Under New York law, a conviction for conspiracy requires both an agreement to commit an unlawful act and at least one overt act in furtherance of that agreement.[1] Whether the overt act required to convict a defendant for conspiracy must be shown to be constitutionally unprotected presents an important question. An argument can of course be made that overt acts are used only to demonstrate the existence of a conspiracy, and to draw reasonable inferences as to the intent of the alleged conspirator.

Although the Court has indicated that the overt act requirement of the treason clause ensures that "thoughts and attitudes alone cannot make a treason" (*Cramer* v. *United States,* 325 U. S. 1, 29), it has never decided whether activities protected by the First Amendment can constitute overt acts for purposes of a conviction for treason. The matter was adverted to in *Cramer* v. *United States:*

> "Thus the crime of treason consists of two elements: adherence to the enemy; and rendering him aid and comfort. A citizen intellectually or emotionally may favor the enemy and harbor sympathies or convictions disloyal to this country's policy or interest, but so long as he commits no act of aid

---

[1] N. Y. Pen. Law §§ 105.00–105.20 (1967). At the time of Epton's trial, the New York law was essentially the same. N. Y. Pen. Law §§ 580, 583 (1966 Cum. Supp.).

and comfort to the enemy, there is no treason. On the other hand, a citizen may take actions which do aid and comfort the enemy—*making a speech critical of the government or opposing its measures,* profiteering, striking in defense plants or essential work, and the hundred other things which impair our cohesion and diminish our strength—but if there is no adherence to the enemy in this, if there is no intent to betray, there is no treason." (Italics added.) *Id.,* at 29.

In the same case, the four dissenters noted that:

"It is plain . . . that the requirement of an overt act is designed to preclude punishment for treasonable plans or schemes or hopes which have never moved out of the realm of thought or speech." *Id.,* at 61.

The lower federal courts have considered the question in a few cases, the most exhaustive treatment probably being found in *Chandler* v. *United States,* 171 F. 2d 921 (C. A. 1st Cir. 1948). Treason, of course, is not the charge here. Yet the use of constitutionally protected activities to provide the overt acts for conspiracy convictions might well stifle dissent and cool the fervor of those with whom society does not agree at the moment. Society, like an ill person, often pretends it is well or tries to hide its sickness. From this perspective, First Amendment freedoms safeguard society from its own folly. As long as the exercise of those freedoms is within the protection of the First Amendment, the question is presented whether this Court should permit criminal convictions for conspiracy to stand, when they turn on that exercise.

The issue, then, is whether Epton's speeches and his participation in the preparation and distribution of leaflets can be used as overt acts in a conspiracy charge, without a requirement that they must first be found constitutionally unprotected.

*Yates* v. *United States,* 354 U. S. 298, can be construed to permit constitutionally protected activities to be used as overt acts in criminal conspiracies. But there was a separate opinion in that case, written by my Brother BLACK, which I joined, saying in part:

> "The only overt act which is now charged against these defendants is that they went to a constitutionally protected public assembly where they took part in lawful discussion of public questions, and where neither they nor anyone else advocated or suggested overthrow of the United States Government." *Id.,* at 343.

The majority in the *Yates* case, however, went to some lengths in protecting First Amendment freedoms. There advocacy was the heart of the case, and the majority held that "advocacy" to be an ingredient of a crime "must be of action and not merely abstract doctrine," *id.,* at 325. The Court reversed the convictions because the instructions to the jury did not properly delineate that line of distinction. While the majority held that attending a meeting could be an overt act, *id.,* at 334, it went on to hold that the line between constitutionally protected First Amendment rights and those that exceeded the limits must be carefully drawn in instructions to the jury. In the present cases, however, the trial court in its charge to the jury made no qualifications whatsoever as to the permissible range of the use of speech and publications as overt acts. There was no instruction whatsoever that the jury would first have to determine that the particular speech or the particular publication was not constitutionally protected. The principle of *Yates* was therefore disregarded.[2]

---

[2] My Brother STEWART agrees that "it is at least arguable that a State cannot convict a man of criminal conspiracy without first demonstrating some constitutionally unprotected overt act in fur-

Since in my opinion, none of Epton's convictions is free of doubt there is no basis for applying the rule that there is no occasion to review a conviction on one count of an indictment if the judgment on another count is valid and the sentences are concurrent. See *Lanza* v. *New York*, 370 U. S. 139, 146, 152 (separate opinion of MR. JUSTICE BRENNAN); *Hirabayashi* v. *United States*,

---

therance of the alleged unlawful agreement." But he dismisses that contention in this case because, in his view, the record demonstrates that at least some of Epton's activities were not constitutionally protected. Perhaps my Brother STEWART means that although some overt acts charged were constitutionally protected, others were not. The latter is doubtless true. But the charge to the jury drew no such discriminating line; and so far as we know the conviction may have rested in whole or in part on overt acts which had First Amendment protection. Because the jury rendered a general verdict on count one, it is impossible for this Court to determine whether a protected activity was employed to convict Epton of conspiracy to riot. In such circumstances, our precedents indicate that the proper procedure would be to set aside the conviction if any of the acts submitted were constitutionally protected. See *Haupt* v. *United States,* 330 U. S. 631, 641, n. 1. Cf. *Yates* v. *United States,* 354 U. S. 298, 311–312; *Cramer* v. *United States,* 325 U. S. 1, 36, n. 45; *Stromberg* v. *California,* 283 U. S. 359, 367–368. Moreover, the approach taken by my Brother STEWART hearkens back to the view of the Court in *Dennis* v. *United States,* 341 U. S. 494, 512–513, that the question of "clear and present danger" is one of law. The Court ruled that as long as the jury had found the facts essential to establish the substantive crime, the protection of the First Amendment against conviction on those facts was a matter of law for the courts to determine. I dissented in that case, in part on the ground that our precedents had established that the "question of the clear and present danger, being so critical an issue in the case, would be a matter for submission to the jury." *Id.,* at 587. And, as already noted, the Court in *Yates* v. *United States* showed greater solicitude toward the role of the jury in this sensitive First Amendment area than the Court in *Dennis* or this Court today. To be consistent with the the approach taken in *Yates,* the jury should be instructed on all points of law that make the difference between conviction and acquittal.

320 U. S. 81, 85; *Whitfield* v. *Ohio*, 297 U. S. 431, 438. Like my Brother STEWART, I believe that Epton's convictions for advocating criminal anarchy and conspiracy to advocate criminal anarchy should be reviewed by this Court to consider whether New York's anarchy statutes either on their face or as applied here pass beyond the pale of constitutionality. See *Keyishian* v. *Board of Regents*, 385 U. S. 589; *Gitlow* v. *New York*, 268 U. S. 652. Accordingly, I would grant certiorari in No. 502, Misc., note probable jurisdiction in No. 771, Misc., and set the cases for oral argument.