UNITED STATES of America ex rel.
William EPTON, Petitioner-
Appellant,

v.

Albert NENNA, Warden, Manhattan
House of Detention for Men,
Respondent-Appellee.

No. 459, Docket 35559.

United States Court of Appeals,
Second Circuit.

Argued Dec. 11, 1970.

Decided June 30, 1971.

Eleanor Jackson Piel, New York City
(Melvin L. Wulf, American Civil Liber-

ties Union, Paul Chevigny, New York Civil Liberties Union, New York City, on the brief), for petitioner-appellant.

David Otis Fuller, Jr., Asst. Dist. Atty. (Frank S. Hogan, Dist. Atty., New York County, Michael R. Juviler, Asst. Dist. Atty., on the brief), for respondent-appellee.

Before LUMBARD and FEINBERG, Circuit Judges, and CLARIE, District Judge.*

FEINBERG, Circuit Judge:

William Epton appeals from an order of the United States District Court for the Southern District of New York, Marvin E. Frankel, J., denying his petition for a writ of habeas corpus. After a jury trial in the New York State courts, petitioner was convicted in 1966 of criminal anarchy, former N.Y.Pen. Law §§ 160, 161,[1] conspiracy to advocate criminal anarchy, former N.Y.Pen.Law §§ 160, 161, 580, and conspiracy to commit riot, former N.Y.Pen.Law §§ 580, 2090. He was sentenced to three concurrent one-year terms in the city penitentiary. Judge Frankel's opinion, 318 F.Supp. 899, carefully considered petitioner's major arguments and adequately set forth the reasons why habeas relief was denied. Our consideration of the merits of petitioner's most substantial claims is foreclosed both by a recent decision of this court and by the Supreme Court ruling in Epton's prior direct appeal to it. As to the other issues raised before us, we affirm the district court essentially for the reasons stated in its opinion.

Without repeating Judge Frankel's efforts, some background would be helpful. Epton's convictions were based upon his activities about the time of the 1964 Harlem riot. That riot began two days after a 15-year old Negro boy was

shot and killed by an off-duty white New York policeman. For some months previously, Epton, as leader of the Harlem branch of the Progressive Labor Movement (P.L.M.),[2] had been making an issue of what he characterized as the policy of brutality by the police against the black residents of Harlem. However, there was no evidence that Epton had any hand in the riots that broke out on the night of July 18, and the trial court dismissed that count of the four-count indictment that had charged Epton with riot in violation of former N. Y.Pen.Law § 2090. Even so, Epton was by no means inactive in Harlem during this period. In speeches given on street corners and in the Harlem office of the P.L.M., in conversations with other members of P.L.M. and the public, and in leaflets and posters, Epton spoke out about the need of Harlem residents to organize for self-defense against the police. Without extensive quotation, it is enough to say that the tenor of Epton's remarks was violent at times and they could fairly be characterized as the now familiar militant-revolutionary rhetoric of black power advocates. At the same time, Epton was organizing a mass demonstration for Saturday, July 25, with the 32nd Police Precinct to be the objective of a march. Although petitioner's application for a demonstration permit was turned down, he went ahead with his plans. On July 25, after the rioting had subsided, Epton and a small group attempted to begin their planned march. Instead, Epton was arrested.

Petitioner's conviction was affirmed in the New York State courts. New York v. Epton, 19 N.Y.2d 496, 281 N.Y. S.2d 9, 227 N.E.2d 829 (1967), aff'g, 27 A.D.2d 645, 276 N.Y.S.2d 847 (1966). In the Supreme Court, Epton's petition for a writ of certiorari was denied, and his appeal was dismissed for want of a

---

* Of the District of Connecticut, sitting by designation.

1. Since Epton's indictment, the New York penal law has been amended. This opinion will refer to the earlier law, under which Epton was tried, as "former N.Y. Pen.Law § ——."

2. This is a self-described Marxist political organization. The Harlem branch in 1964 apparently had six members, including one police informer.

substantial federal question., 390 U.S. 29, 88 S.Ct. 824, 19 L.Ed.2d 808, rehearing denied, 390 U.S. 976, 88 S.Ct. 1057, 1061, 19 L.Ed.2d 1198 (1968), petition for leave to file petition for rehearing out of time denied, 398 U.S. 944, 90 S.Ct. 1832, 1833, 26 L.Ed.2d 282 (1970).[3]

## I.

■ As already indicated, several of the issues before us do not require extended discussion by this court. The first of these is the argument that Epton was indicted in violation of his constitutional rights because the members of the New York grand jury were selected under a system that discriminated as to race, wealth and age. The district court, and the parties in their briefs in this court, apparently considered this to be the most significant question in the case. However, our consideration of the issue is sharply limited by intervening precedent. Since the decision of the district court in favor of the State on the issue and since the argument of this appeal, this court has ruled, in United States ex rel. Chestnut v. Criminal Court, 442 F.2d 611 (1971), that the grand jury that indicted Epton was not unconstitutionally selected. Epton raises "the same arguments"[4] that were rejected by this court in *Chestnut*. We therefore, affirm on this issue.

■ The other issues that require only brief discussion are those that raise the constitutionality of the New York anarchy law under which Epton was convicted.[5] As we understand appellant's brief, his arguments include the following: (1) the New York Court of Appeals could not constitutionally rede-

fine and narrow the anarchy law in Epton's appeal, 19 N.Y.2d 496, 281 N.Y.S.2d 9, 227 N.E.2d 829 (1967), after it had definitively interpreted the statute over 40 years earlier in New York v. Gitlow, 234 N.Y. 132, 136 N.E. 317 (1922), aff'd, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925); (2) even if the New York court could reinterpret the statute, the new interpretation remains unconstitutional because it declares illegal speech that is protected by the first amendment, citing, e. g., Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); and, (3) even if the new interpretation of the anarchy statute is constitutional, applying it to Epton violates the due process requirement of adequate notice because Epton could reasonably have expected, in light of modern constitutional law, that a state anarchy statute which had not been invoked since the *Gitlow* prosecution in 1921 was moribund, citing, e. g., Shuttlesworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

These questions are very substantial,[6] but we do not believe that we are free to rule on them in this case. The district court reasoned that the Supreme Court had either decided them or had held that they should not be reached and that this was binding on a lower court under the doctrine of law of the case. Briggs v. Pennsylvania R.R., 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948); Ex Parte Sibbald v. United States, 12 Pet. 488, 37 U.S. 488, 9 L.Ed. 1167 (1838); see Banco Nacional de Cuba v. Farr, 383

3. For a further exposition of the procedural history of this case, see 318 F.Supp. at 901–902.

4. See People v. Chestnut, 26 N.Y.2d 481, 311 N.Y.S.2d 853, 855 n. 1, 260 N.E.2d 501 (1970).

5. In response to Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956), New York has since amended its anarchy statute so that it applies only to the advocacy of the overthrow by force or

violence of the New York State government. N.Y.Pen.Law § 240.15, eff. Sept. 1, 1967.

6. Cf. Samuels v. Mackell, 288 F.Supp. 348 (S.D.N.Y.1968) (three-judge court), aff'd, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) (affirmed "solely on the ground that, in the appropriate exercise of the court's discretion, relief by way of declaratory judgment should have been denied without consideration of the merits." 401 U.S. at 73, 91 S.Ct. at 768).

F.2d 166, 177–178 (2d Cir. 1967), cert. denied, 390 U.S. 956, 88 S.Ct. 1038, 20 L.Ed.2d 1151 (1968). We agree. As noted above, the Supreme Court dismissed Epton's appeal from the New York decision for want of a substantial federal question, 390 U.S. 29, 88 S.Ct. 824, 19 L.Ed.2d 808 (1968), and this is a decision on the merits [7] of those issues raised on appeal.[8] While it is not altogether clear, the Court's dismissal was based either on an affirmance of the ruling of the New York Court of Appeals on the substantive issues, or, as indicated in the concurrence of Justice Stewart, *id.*, and the dissent of Justice Douglas, *id.* at 30, 88 S.Ct. 824,[9] on the concurrent sentence doctrine, citing Lanza v. New York, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962); Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943).

Petitioner argues that because of recent changes in the concurrent sentence doctrine we should examine the constitutionality of the anarchy law. Citing Benton v. Maryland, 395 U.S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969), he claims that the doctrine no longer states a jurisdictional rule. That may be so, but we are not persuaded to reverse the district court. First, *Benton* does not answer the first branch of the law of the case problem here, i. e., that the Supreme Court considered and summarily affirmed the rulings of the New York Court of Appeals. Second, *Benton* indicates that the concurrent sentence doctrine may still exist as a discretionary

rule of convenience, 395 U.S. at 791, 89 S.Ct. 2056, and we have so assumed. See United States v. Febre, 425 F.2d 107, 113 (2d Cir.), cert. denied, 400 U.S. 849, 91 S.Ct. 40, 27 L.Ed.2d 87 (1970); United States ex rel. Weems v. Follette, 414 F.2d 417 (2d Cir. 1969), cert. denied, 397 U.S. 950, 90 S.Ct. 973, 25 L. Ed.2d 131 (1970). But, as correctly noted by Judge Frankel, such discretion in this case is properly not ours to exercise but rather the Supreme Court's.[10] Accordingly, except for the issues considered in Part II, infra, we do not pass upon the merits of appellant's constitutional arguments. In light of the substantiality of some of those contentions, we are comforted in the thought that if our deference to the prior Supreme Court ruling in this case is undue, that tribunal—to which appellants may obviously apply—is the proper forum to so decide.

## II.

Of course, we are not similarly foreclosed from considering the questions which could properly have been raised only by petition for a writ of certiorari. Brown v. Allen, 344 U.S. 443, 497, 73 S. Ct. 397, 97 L.Ed. 469 (1953) (separate concurrence by Mr. Justice Frankfurter). And to those issues we now turn.

Epton's first and most substantial argument is that his conviction for conspiracy to riot violated his rights under the first amendment because the overt acts alleged in the indictment were all constitutionally protected speech and,

---

7. For the "lively disagreement among respected constitutional scholars concerning the significance of the Supreme Court's dismissal of an appeal," see the authorities collected by Judge Frankel, 318 F. Supp. at 906 n. 8.

8. Although he did not discuss the question, apparently Judge Frankel believed that not only the three issues set forth in the text but also two others, i. e., whether the convictions violated due process because there was no evidence that petitioner advocated the overthrow of the State government and whether the trial court's charge met the requirements of the first amendment, were raised on appeal to the Supreme Court. 28 U.S.C.

§ 1257. We agree. See Fiske v. Kansas, 274 U.S. 380, 385, 47 S.Ct. 655, 71 L.Ed. 1108 (1927); Dahnke-Walker Co. v. Bondurant, 257 U.S. 282, 288–289, 42 S.Ct. 106, 66 L.Ed. 239 (1921).

9. Petitioner also refers to a memorandum of Mr. Justice Harlan concerning his bail application quoted in a letter, dated June 5, 1967, from the Clerk of the Supreme Court to Mrs. Eleanor J. Piel, petitioner's attorney.

10. This result might be different if we reversed Epton's conviction on the conspiracy to riot count. But, as explained in Part II, *infra*, we affirm Judge Frankel's opinion as to that issue also.

even if some were unprotected, because the trial judge did not instruct the jury that they could only convict as to those. On the first phase of this argument the district court ruled that the overt acts central to the State's case were outside the sphere of the first amendment. The court reasoned that in the context of the 1964 Harlem riots "talk of terror, killing and warfare was 'advocacy of the use of force or of law violation * * * directed to inciting or producing imminent lawless action * * * and likely to incite or produce such action.'" 318 F. Supp. at 909, quoting Brandenburg v. Ohio, 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1968).

Judge Frankel also concluded that it was not constitutional error for the trial judge to fail to caution the jury against convicting solely on constitutionally protected overt acts because petitioner did not claim that such a request was made. Nor had he made that claim in his brief to the New York Court of Appeals or in his petition for a writ of certiorari or his jurisdictional statement. In addition, the district court believed that the jury would not have convicted Epton "unless it had focussed precisely on the * * * evidence of unprotected overt acts." 318 F.Supp. at 909.

Petitioner does not argue here that he made a specific request for a limiting instruction as to the conspiracy to riot count. Rather he claims that the issue was preserved by his general objection that the entire prosecution violated his first amendment rights and by his specific objection to the trial judge's reinstruction of the jury after they had requested additional instruction on other counts, those that charged criminal anarchy and conspiracy to advocate criminal anarchy.[11] Whether or not this oblique objection preserved petitioner's claim, we agree with the district court's ultimate conclusions on these issues.

The argument that all the overt acts were constitutionally protected speech simply ignores substantial portions of the evidence. Among the acts alleged to be in furtherance of the conspiracy to riot were that Epton "discussed starting disturbances in Brooklyn," that Epton "discussed the use of Molotov cocktails," and that he made a speech in which he "discussed the killing of cops and judges." There was evidence to support a jury finding that each of these overt acts had in fact occurred, and we do not see why they are necessarily constitutionally protected in the sense appellant puts to us. If the position is taken that any speech is so protected merely because words have been spoken to communicate ideas, the position is wrong. Clearly a charge of conspiring to violate the narcotics laws could be proved by evidence that one of the overt acts was a "discussion" among the conspirators. Cf. New York State Broadcasters Ass'n v. United States, 414 F.2d 990, 996–997 (2d Cir. 1969), cert. denied, 396 U.S. 1061, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970). If the point is that Epton's words were publicly proclaimed to further a political view and were therefore protected, the answer is that this is an inaccurate description of the first two examples given above, which were private conversations. It is true that the third overt act occurred in a speech in which Epton did tell an audience in this tense period:

> They [the cops] declared war on us and we should declare war on them and every time they kill one of us damn it, we'll kill one of them and we should start thinking that way right now * * * because we had better stop talking about violence as a dirty word * * *.

We have great difficulty with the view that it is improper to use this language as proof of an overt act in furtherance of a conspiracy to riot.[12]

---

11. Of the 25 overt acts alleged in this count, 15 were identical to the overt acts alleged under the conspiracy to riot count.

12. In his opinion concurring in the dismissal of Epton's prior appeal to the Supreme Court, Justice Stewart noted:
But the State in these cases presented proof that Epton had actively partici-

Moreover, it must be remembered that Epton was convicted of conspiracy in this case, the essence of which is an agreement to do an unlawful act, the crime of riot. Under New York law, the State need only prove the agreement and one overt act in furtherance of the agreement. Former N.Y.Pen.Law §§ 580, 583.[13] In Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), the only overt acts proved at trial were constitutionally protected speech, two public meetings. Nevertheless, the Court held that on retrial these would be sufficient overt acts and stated, 354 U.S. at 334, 77 S.Ct. at 1084:

> It is not necessary that an overt act be the substantive crime charged in the indictment as the object of the conspiracy. * * * Nor, indeed, need such an act, taken by itself, even be criminal in character. The function of the overt act in a conspiracy prosecution is simply to manifest "that the conspiracy is at work," Carlson v. United States, 187 F.2d 366, 370 [(10th Cir. 1951)], and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence. [Other citations omitted.]

Under this reasoning, it is not the "speech" that is made criminal, but rather the agreement, and whether the overt act is constitutionally protected speech would be irrelevant. We recognize that the question is a substantial one. Justices Black and Douglas dissented on this issue in Yates. In Epton's prior appeal to the Supreme Court, Justice Douglas dissented from dismissal of Epton's appeal on the same ground, 390 U.S. at 33, 88 S.Ct. at 824. And Justice Stewart, while concurring in the dismissal, agreed that:

> [I]t is at least arguable that a State cannot convict a man of criminal conspiracy without first demonstrating some constitutionally unprotected overt act in furtherance of the alleged unlawful agreement.

390 U.S. at 29–30 n. †, 88 S.Ct. at 827. But we do not think we should ignore what appears to be the meaning of the most relevant Supreme Court precedent. If Yates does not now govern this issue, it is for that court, rather than for an inferior federal court, to say so.

■ Petitioner's second argument is that an amendment to the same count of the indictment (conspiracy to riot) deprived him of due process under the fourteenth and fifth amendments. The indictment alleged that Epton conspired with others to "agree to participate in a riot" by "promoting * * * an assembly of more than three persons which disturbed the public peace." The amendment changed the last five words to "which would disturb the public peace." As noted above, the count charged Epton with conspiracy and he could have been convicted of that whether or not the substantive offense which was the object of the conspiracy was completed. Cf. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The amendment was a minor change of grammatical tense and clarified the issue for the jury. Cf. United States v. Caine, 441 F.2d 454 (2d Cir. 1971). Even if the indictment had not been clarified, Epton could properly have been convicted of conspiracy.[14] We agree with Judge Frankel that the ac-

---

pated in the formation of a group dedicated to armed revolt against the police under the direction of "block captains" and with the assistance of "terrorist bands," equipped with Molotov cocktails that Epton himself had explained how to use. In the context of this record, activities such as these can make no serious claim to constitutional protection.
390 U.S. at 29–30 n. †, 88 S.Ct. at 824.

13. Present New York law is similar. See N.Y.Pen.Law §§ 105.00–105.20.

14. Of course, well before this ruling was made, the substantive charge of riot against Epton had already been dismissed by the trial judge, thereby eliminating any confusion of the issue submitted to the jury on the conspiracy to riot count.

tion of the state judge was not constitutionally impermissible.

Appellant's last argument need not be discussed with particularity. He alleges that certain rulings of the trial court and actions of the prosecutor were prejudicial and deprived him of a fair trial. The issue before us is not whether error was committed, but whether these rulings, singly or together, rendered the trial so unfair as to deny appellant due process, thereby raising a federal constitutional question. See Schaefer v. Leone, 443 F.2d 182 (2d Cir. 1971); United States ex rel. Cannon v. Maroney, 373 F.2d 908 (3d Cir. 1967). We have considered appellant's argument and conclude that due process was not denied.

Accordingly, we affirm the district court's order denying Epton's petition for the writ of habeas corpus.