Jasen, J.
(dissenting). I respectfully dissent. In my view, the determination of the State Liquor Authority, and the provisions of the Alcoholic Beverage Control Law as thereby construed, impose an impermissible burden upon interstate commerce in violation of the Commerce Clause of the Federal Constitution. In effect, the determination upheld today requires that the prices charged to New York wholesalers be lower than the lowest prices charged to any wholesaler elsewhere in this country, by an amount equal to the value of any promotional allowances provided thereto but not to New York wholesalers, even where, as here, those same allowances were offered as well in New York but barred by the Authority as prohibited by state statute. Despite the majority’s holding that the unconstitutional impact of the pricing requirement upon interstate commerce has not been demonstrated on the record beyond a reasonable doubt, in my view the obvious effects of that pricing requirement in practical operation cannot be gainsaid. (Cf. Boston Stock Exch. v State Tax Commn., 429 US 318, 330-331; Best & Co. v Maxwell, 311 US 454, 456; Western Oil & Gas Assn. v Cory, 726 F2d 1340, 1342.) It will simply be impossible for distillers to comply with the lowest price laws of other states, as well as New York’s, unless the distillers discontinue their allowances in those other states — thereby effectively exporting New York’s prohibition (see, United States Brewers Assn. v Healy, 692 F2d 275,279, affd _ US _, 104 S Ct 265; Baldwin v G. A. F. Seelig, 294 US 511, 524) — or unless the other states decide to permit an exception in their affirmation laws for the lower prices in New York. I cannot agree with the majority that this State’s pricing requirements can withstand constitutional challenge on the mere presumption that their logic will be recognized by the other states who will then acquiesce therein. (See, Kassel v Consolidated Freightways Corp., 450 US 662, 665; A & P Tea Co. v Cottrell, 424 US 366,380.) Additionally, while I believe that the administrative determination should be vacated, I would construe the statutory provisions upon which it was predicated by limiting their reach in such a manner as would avoid the constitutional *491 infirmity while at the same time preserving, in substantial part, the legislative intent. (See, People v Epton, 19 NY2d 496, 505, cert denied 390 US 29; United States v Jin Fuey Moy, 241 US 394, 401).
The following facts are not in dispute. Petitioner, BrownForman Distillers Corporation, is a Delaware corporation engaged in the business of producing and importing distilled spirits which it sells in interstate commerce to private wholesalers in more than 30 states, including New York, as well as to “control states” which themselves conduct the wholesale and retail business within their own boundaries. Petitioner is qualified to transact business in New York State, has offices in Manhattan and White Plains, and holds liquor licenses for both premises.
In May 1978, the Federal Bureau of Alcohol, Tobacco and Firearms (BATF) approved petitioner’s request for permission to conduct a marketing and promotional program with each of its wholesalers in the various states. BATF, which had decided the previous year that the Federal Alcohol Administrative Act does not prohibit distillers from compensating wholesalers with allowances for promotional services or activities (BATF Ruling 77-17), conditioned its approval upon petitioner’s compliance with certain requirements, including the following: (1) that the sums to the wholesalers were to be given without any obligation to spend any amount in a particular way or to submit to an accounting; (2) that the allowances would not be contingent upon the prices paid by the wholesalers or their volume of sales; and (3) that the promotional plans could be canceled by petitioner or the respective wholesaler at any time.
Following receipt of BATF approval, petitioner obtained approval from several states to conduct its promotional allowance program with the wholesalers therein. Among those states was Massachusetts whose Alcoholic Beverage Control Commission granted permission to petitioner, who then began the program there in fiscal year 1980. In Massachusetts, as in other so-called “affirmation states” which require distributors to affirm that their prices to wholesalers are the lowest they charge to wholesalers anywhere else, petitioner has supplied alcoholic beverages at its affirmed lowest prices. The individual affirmed prices have not been discounted to reflect the value of any promotional allowances petitioner has provided to wholesalers, but merely state the specific amounts charged for each particular item.
These prices are identical to those which petitioner has charged in New York. Indeed, as required by statute, petitioner *492 has filed schedules of prices with respondent, the State Liquor Authority, and, since May 1979, has affirmed that the prices to wholesalers of brands of liquor set forth were no higher than would be sold to wholesalers in any other state.
However, in this State, petitioner has not been permitted to provide wholesalers with such promotional allowances as petitioner has given to wholesalers in Massachusetts and elsewhere. Although petitioner had sought to conduct its BATF-approved promotional program in this State, permission to do so was refused by respondent by reason of the Alcoholic Beverage Control Law which prohibits any allowances or inducements except quantity discounts and discounts with payment within a prescribed time. Consequently, although the petitioner’s affirmed prices to wholesalers in New York have been equal to the lowest that it has charged elsewhere, wholesalers in this State have not been afforded the benefits of petitioner’s promotional allowances.
In May 1981, respondent served petitioner with a statement of charges alleging violations of this State’s “affirmation statute”, i.e., Alcoholic Beverage Control Law § 101-b (3), for selling alcoholic beverage products to wholesalers in New York at prices higher than elsewhere. Specifically, respondent charged that although petitioner had affirmed, pursuant to the statute, that its price for each brand of liquor to wholesalers in this State “would be no higher than the lowest price at which such brands of liquor would be sold by [petitioner] to wholesalers in any other state”, nevertheless, petitioner had “provided allowances and/or inducements to wholesalers in other states which effectively caused the price of those brands of liquor to wholesalers in those other states to be lower than the price to wholesalers in New York State”. At the administrative hearing that followed, petitioner conceded that it had made lump-sum payments under its promotional program to wholesalers in other states, and that it had not lowered its affirmed prices to New York wholesalers to reflect a proportionate discount.
The hearing officer sustained the charges against petitioner, holding in pertinent part:
“I further find it significant [that] the method of promotion utilized by [petitioner], consisting of a monetary allowance, was utilized in part by the wholesalers to provide ‘Post Downs’ [i.e., selected price reductions]. I further find that' the promotional allowance amounted to a discount by the licensee to the wholesaler thereby decreasing the price by Brown-Forman to wholesalers in Massachusetts.
*493 “The promotional funds used by wholesalers as Tost Downs’ effectively lowered the price to wholesalers in Massachusetts below the affirmation price in New York. It is immaterial that the promotional funds were not designed for any particular brand name of [petitioner].
“I further find that [petitioner’s] method of promotion was in effect a method designed to circumvent the New York State Alcoholic Beverage Control Law and did violate Section 101-b, subdivision 3(a)(d)(g) of the Alcoholic Beverage Control Law.”
Finally, the hearing officer noted petitioner’s contention that the Alcoholic Beverage Control Law as thus applied would violate the Commerce Clause of the Federal Constitution, but he disclaimed authority to make such a determination.
Respondent adopted the findings and conclusions of the hearing officer and imposed penalties of a 10-day suspension and forfeiture of; a $20,000 bond on each of petitioner’s two licenses. The suspensions were deferred subject to imposition within one year should respondent be satisfied that petitioner had not taken measureXfto assure the proper conduct of the licensed premises.” Payment on the bonds, however, was required notwithstanding thatNdeferment.
Petitioner commenced this article 78 proceeding challenging respondent’s determinatidn on the grounds that the administrative findings were not supported by substantial evidence in the record and that respondent’s application of the affirmation statute impermissibly burden^ interstate commerce. The proceeding was transferred to the Appellate Division which, with one Justice dissenting, confirmed respondent’s determination. The court held that the record supported respondent’s finding that “petitioner’s [promotional] program, which is not reflected in its price schedules filed with [respondent], effectively reduces the actual liquor prices it charges in other States below the prices that it charges New York wholesalers.” [Emphasis in original.] The court also rejected petitioner’s Commerce Clause contention, holding that “New York’s affirmation statute has no impact on petitioner’s allowance program and does not dictate out-of-State discounts.” (100 AD2d, at pp 59, 60.)
While agreeing with the majority that there is substantial evidence in the record to support respondent’s factual conclusions, I cannot concur that respondent’s determination, and the pricing requirements thereby imposed, will have but a slight and remote impact upon interstate commerce. Rather, it seems virtually inescapable to me that the effect will be to interfere *494 substantially with petitioner’s and other distillers’ business practices in other states in violation of the Federal Commerce Clause. Accordingly, I would reverse the judgment of the Appellate Division and vacate respondent’s determination.
New York’s affirmation statute, Alcoholic Beverage Control Law § 101-b (3), provides that a distiller must file with respondent both a schedule of its prices to wholesalers and an affirmation that the price of each of its products as set forth in such schedule is no higher than the lowest price at which the product will be sold in any other state during the month in which the schedule is in effect.[1] The affirmation requirement of the precursor to the present statute, originally enacted in 1964 and differing only in its requirement that the referenced lowest prices by those charged anywhere in the Nation during the month preceding the schedule then in effect (L 1964, ch 531, § 9), was chal *495 lenged 20 years ago, shortly after its enactment, on grounds that it violated the Commerce Clause. This court upheld the affirmation provisions, noting that its decision was predicated on the “reasonable * * * expectation] that the statute would be administered consistently with its sole purpose to regulate the intrastate sale of liquor.” (Seagram & Sons v Hostetter, 16 NY2d 47, 59, affd 384 US 35 [emphasis added].) Likewise, the Supreme Court, in affirming this court’s holding, emphasized that, inasmuch as the affirmation requirement had been stayed, it was deciding only “the constitutionality of those provisions on their face.” (384 US 35, 41 [emphasis added].)
*494 “3. (a) No brand of liquor or wine shall be sold to or purchased by a wholesaler, irrespective of the place of sale or delivery, unless a schedule, as provided by this section, is filed with the liquor authority, and is then in effect. Such schedule shall be in writing duly verified, and filed in the number of copies and form as required by the authority, and shall contain, with respect to each item, the exact brand or trade name, capacity of package, nature of contents, age and proof where stated on the label, the number of bottles contained in each case, the bottle and case price to wholesalers, the net bottle and case price paid by the seller, which prices, in each instance, shall be individual for each item and not in ‘combination’ with any other item, the discounts for quantity, if any, and the discounts for time of payment, if any. Such brand of liquor or wine shall not be sold to wholesalers except at the price and discounts then in effect unless prior written permission of the authority is granted for good cause shown and for reasons not inconsistent with the purpose of this chapter
* ** *
“(d) There shall be filed in connection with and when filed shall be deemed part of the schedule filed for a brand of liquor pursuant to paragraph (a) of this subdivision an affirmation duly verified by the owner of such brand of liquor, or by the wholesaler designated as agent for the purpose of filing such schedule if the owner of the brand of liquor is not licensed by the authority, that the bottle and case price of liquor to wholesalers set forth in such schedule is no higher than the lowest price at which such item of liquor will be sold by such brand owner or such wholesaler designated as agent, or any related person, to any wholesaler anywhere in any other state of the United States or in the District of Columbia, or to any state (or state agency) which owns and operates retail liquor stores (i) at any time during the calendar month for which such schedule shall be in effect, and (ii) if a like affirmation has been filed at least once but was not filed during the calendar month immediately preceding the month in which such schedule is filed, then also at any time during the calendar months not exceeding six immediately preceding the month in which such schedule shall be in effect and succeeding the last calendar month during which a like affirmation was in effect”.
*495 It is true that the Supreme Court declared that “[a]s part of its regulatory scheme for the sale of liquor, New York may constitutionally insist that liquor prices to domestic wholesalers and retailers be as low as prices offered elsewhere in the country.” (Id., at p 43.) But the court made clear that it was confronted in that case with mere conjecture as to the extraterritorial impact of the affirmation requirement considered alone, and with the purely speculative interference with interstate commerce alleged by the statute’s challengers. The court, which concluded by warning that “specific future applications * * * may engender concrete problems of constitutional dimension” (id., at p 52), noted that: “We need not now decide whether the mode of liquor regulation chosen by a State in such circumstances could ever constitute so grave an interference with a company’s operations elsewhere as to make the regulation invalid under the Commerce Clause. See Baldwin v, G.A.F. Seelig, 294 U. S. 511. No such situation is presented in this case * * * The serious discriminatory effects of [the affirmation requirement] alleged by appellants on their business outside New York are largely matters of conjecture. It is by no means clear, for instance, that [the affirmation requirement] must inevitably produce higher prices in other States, as claimed by appellants, rather than the lower prices sought for New York. It will be time enough to assess the alleged extraterritorial effects of [the affirmation requirement] when a case arises that clearly presents them.” (Id., at pp 42-43 [emphasis added].)
Indeed, this case now presents additional considerations which give rise to the “extraterritorial effects” left unexamined in Seagram. In that case, clearly there was an evaluation only of the effect upon interstate commerce of the requirement for an affirmation of lowest prices per se. There was no occasion to examine the operative effect of that requirement together with the other restrictions unique to this State’s statutory scheme. *496 Specifically, unlike Seagram, this appeal involves not only the requirement for affirmation of lowest prices (Alcoholic Beverage Control Law § 101-b [3] [d]), but also the ramifications of that requirement when combined with the prohibition of rebates, allowances and other inducements to wholesalers in this State (§ 101-b [2] [b])[2] and the computation of “lowest price” as reflecting all such rebates, allowances and inducements which are provided to wholesalers elsewhere (§ 101-b [3] [g]).[3] In Seagram, in the absence of any obvious burden upon interstate commerce, this State’s effort to insure liquor price parity solely by requiring affirmation of the lowest prices charged the previous month in other states was held not to be unconstitutional on its face. Here, other critical factors are present.
First, petitioner offered to provide promotional allowances to wholesalers in this State but was refused by respondent by reason of the prohibition contained in Alcoholic Beverage Control Law § 101-b (2) (b). Thereafter, because petitioner provided the very same promotional allowances to wholesalers in other states where they were not prohibited, respondent charged petitioner with and determined it to be guilty of lowering its prices to those wholesalers in violation of the affirmation requirement *497 of section 101-b (3) (d). Respondent’s determination, therefore, necessarily requires more than that petitioner sell to wholesalers in this State at prices as low as those charged elsewhere. In effect, the determination also requires either that the prices petitioner charges to New York wholesalers be actually lower than those charged elsewhere, by an amount equal to the value of the promotional allowances permitted elsewhere, or that those promotional allowances, which are not permitted in this State, be discontinued elsewhere to avoid the price disparity with other affirmation states which would otherwise arise from petitioner’s being required to lower its prices in New York.
*496 “2. It shall be unlawful for any person who sells liquors or wines to wholesalers or retailers
* * *
“(b) to grant, directly or indirectly, any discount, rebate, free goods, allowance or other inducement of any kind whatsoever, except a discount not in excess of two per centum for quantity of liquor, a discount not in excess of five per centum for quantity of wine and a discount not in excess of one per centum for payment on or before ten days from date of shipment.” This statutory provision, with some minor differences, was enacted prior to the affirmation requirement (see, L 1942, ch 899) and was in effect at the time the latter was challenged in Seagram.. It was not, however, at issue in that case.
*497 The inevitable effect of respondent’s determination that the promotional allowances permitted elsewhere are reductions in the affirmed prices would thus be to impose this State’s proscription of such allowances upon a distiller’s business practices in other states, or to force a distiller to choose between ceasing its business in New York or violating the affirmation laws elsewhere by lowering its prices here.[4] Because other “affirmation states” also mandate lowest prices, their requirements would necessitate identical reductions in the prices charged there whenever reductions are effectuated in this State to reflect the allowances permitted elsewhere. In turn, under this State’s affirmation statute, further reductions would be required in the prices affirmed here in order to reflect the newly lowered prices elsewhere as “effectively reduced” by the value of the allowances provided in those states. This vicious cycle would again be triggered, and the laws of the other affirmation states would require another equivalent reduction in the prices charged there. Indeed, any supplier, such as petitioner, would ultimately be powerless to extricate itself from this seemingly unending quagmire and the rebounding impediment thus imposed on its interstate business.
The only practical means by which a supplier could resolve the difficulties thus engendered by New York’s affirmation statutory scheme as construed by respondent would be to halt its promotional programs in all affirmation states or cease doing business in this State. Under these circumstances, the lowest price requirements imposed by respondent unduly burden the *498 free flow of interstate commerce in violation of the Federal Commerce Clause by forcing the extension, albeit by indirection, of this State’s proscription of promotional allowances to other states which permit them, to the detriment of the interstate business of petitioner and other suppliers of alcoholic beverages. (See, A & P Tea Co. v Cottrell, supra, at p 380; United States Brewers Assn. v Healy, supra; cf. Seagram & Sons v Hostetter, supra, at p 43.)
Of course, this burden upon interstate commerce might be avoided altogether, as the majority presumes it will be, if every affirmation state conformed its laws and regulations to New York’s requirements as imposed by respondent, or if every such state simply accepted New York’s treatment of out-of-state allowances and inducements as price reductions and, consequently, chose not to insist upon equivalent reductions in their own required “lowest prices”. But a state law or regulation is not saved from constitutional infirmity under the Federal Commerce Clause by the mere possibility that other states might acquiesce or conform their own laws thereto — even if the law or regulation in question is otherwise a reasonable and legitimate exercise of state police power. (See, e.g., Kassel v Consolidated Freightways Corp., supra, at p 671; Raymond Motor Transp. v Rice, 434 US 429, 432; A & P Tea Co. v Cottrell, supra, at p 380; Bibb v Navajo Frgt. Lines, 359 US 520, 529-530; Southern Pac. Co. v Arizona, 325 US 761, 779; Baldwin v G. A. F. Seelig, supra, at p 524.) This is especially true where uniformity of regulation among the States is necessary, such as here, regarding the determination of required lowest prices, if the free flow of trade is not to be hampered severely. (See, Huron Cement Co. v Detroit, 362 US 440, 444; Southern Pac. Co. v Arizona, supra, at pp 767, 770-771; cf. Minnesota Rate Cases, 230 US 352, 399-400; Cooley v Board of Wardens, 12 How [53 US] 299, 319.)
A state may not regulate commerce, albeit within its own territory, where the inevitable effect is to dictate commercial practices beyond its boundaries. (Southern Pac. Co. v Arizona, supra.) This is so, even where the state regulation is in furtherance of a legitimate government interest, whenever the burden on commerce arises from the additional costs incurred by an interstate business in order to comply with standards that are unnecessarily more stringent than those of the other states within whose territory commerce is also affected. (See, e.g., Kassel v Consolidated Freightways Corp., supra; Raymond Motor Transp. v Rice, supra; Bibb v Navajo Frgt. Lines, supra; Southern Pac. Co. v Arizona, supra.) Even in the absence of any *499 protectionist or discriminatory intent, a state law whose practical effect is to regulate the conduct of commerce wholly outside its borders violates the Commerce Clause. (Shafer v Farmers Grain Co., 268 US 189, 199; see also, Baldwin v G.A.F. Seelig, supra, at p 522; Erie R.R. v Pennsylvania, 153 US 628, 646.) .
Where the burden on interstate commerce may fairly be denominated as purely “incidental”, the state regulation may not run afoul of the Federal Constitution. (Hughes v Oklahoma, 441 US 322, 331; Pike v Bruce Church, 397 US 137, 142.) But where the necessary operation of the state law interferes with prices for use in other states, that is impermissible. (United States Brewers Assn. v Healy, supra, at pp 279, 283; Baldwin v G.A.F. Seelig, supra, at pp 521, 528; see also, Edgar v Mite Corp., 457 US 624.)
Moreover, such an impediment to interstate commerce is not saved with respect to alcoholic beverages by the 21st Amendment to the Federal Constitution.[5] While that amendment “bestowed upon the states broad regulatory power over the liquor traffic within their territories” (United States v Frankfort Distilleries, 324 US 293, 299; see also, Hostetter v Idlewild Liq. Corp., 377 US 324, 330), it has clearly not operated to repeal the Commerce Clause in every case involving traffic in intoxicants (Bacchus Imports v Dias, 468 US_,_, 104 S Ct 3049, 3057-3059; Seagram & Sons v Hostetter, supra, at p 42; Hostetter v Idlewild Liq. Corp., supra; Collins v Yosemite Park Co., 304 US 518; cf. California Liq. Dealers Assn. v Midcal Aluminum, 445 US 97, 106-110). A state is free from the restrictions of the Commerce Clause only when regulating “the importation of intoxicants destined for use, distribution, or consumption within its borders” (Hostetter v Idlewild Liq. Corp., supra, at p 330 [emphasis added]; see also, Seagram & Sons v Hostetter, supra, at p 42). Such license does not extend to the interference with or burdening of the promotion, sale and purchase of liquor products outside a state’s own territory. Traditional Commerce Clause principles still govern a state’s activities having that effect. (Bacchus Imports v Dias, supra; United States Brewers Assn. v Healy, supra; Collins v Yosemite Park Co., supra.)
Here, it cannot be said that the combined requirements of New York’s affirmation statute as construed by respondent would only affect the traffic of intoxicants in this State or create *500 mere “repercussions beyond state lines” (Osborn v Ozlin, 310 US 53, 62) which would do no violence to the Commerce Clause. Rather, the obvious and unavoidable consequence would be a drastic emburdening of petitioner’s business practices in other states. Under respondent’s determination, it would be virtually impossible, if not absolutely so, for petitioner to satisfy the lowest-price requirements of other affirmation states while complying with those here. Ultimately, unless every other affirmation state acquiesced in this State’s computation of lowest prices, petitioner would, in effect, be forced to terminate its promotional programs in other states, thereby resulting in the exportation of this State’s bar against promotional allowances. Such an interference with the conduct of petitioner’s business beyond this State’s borders constitutes an excessive burden on interstate commerce prohibited by the Federal Constitution and, consequently, the respondent’s determination should be annulled.
Despite my belief that respondent’s determination is violative of the Federal Commerce Clause, however, I would not strike the entire affirmation statutory scheme upon which that determination was predicated. Rather, it is my view that this court should supplant the construction given the statute by respondent with one that avoids the constitutional infirmity it otherwise would suffer. As explained by Chief Justice Hughes, “The cardinal principle of statutory construction is to save and not to destroy * * * as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act. Even to avoid a serious doubt the rule is the same.” (Labor Bd. v Jones & Laughlin Steel Corp., 301 US 1, 30; see also, New York v Ferber, 458 US 747, 768; Blodgett v Holden, 275 US 142, 148; Panama R. R. Co. v Johnson, 264 US 375, 390; United States v Jin Fuey Moy, 241 US 394, 401; United States v Delaware & Hudson Co., 213 US 366, 408; McCullough v Virginia, 172 US 102, 112.) Indeed, this court has not hesitated to so construe a statute when deemed necessary to save it from constitutional challenge and, thereby, to give an interpretation in harmony with the fundamental laws of both the Nation and this State. (See, People v Liberta, 64 NY2d 152,170-171; People v Epton, 19 NY2d 496, 505; People v Finkelstein, 9 NY2d 342, 345; Dollar Co. v Canadian Car & Foundry Co., 220 NY 270,275-278; People ex rel. Simpson v Wells, 181 NY 252, 257.)
Moreover, this court has on occasion replaced its own earlier construction of a statute with another deemed more in accord with sound constitutional principles. (See, e.g., People v Epton, *501 supra, at p 505; Dollar Co. v Canadian Car & Foundry Co., supra, at pp 276-278.) A fortiori this court should replace an administrative interpretation of a statute in order to avoid serious constitutional deficiencies.
Concededly, the interpretation rendered by respondent was reasonable. It finds support in the literal meaning of the statutory language. Nevertheless, the statute is susceptible to another construction which avoids, what I believe to be, the impermissible burden upon interstate commerce otherwise imposed. It seems to me, therefore, that this court should adopt a construction that is more clearly in harmony with the Federal Commerce Clause — not only to remedy what seems to me the unconstitutionality of the administrative determination and the statute as thereby construed, but also to avoid the unquestionable doubts about the same. (Panama R.R. Co. v Johnson, supra, at p 390; see also, Labor Bd. v Jones & Laughlin Steel Corp., supra, at p 30; United States v Jin Fuey Moy, supra, at p 401.) In my view, the provisions of the affirmation statute should be construed, with due regard to the essential legislative intent, in a manner which insures their constitutionality by minimizing the interference with petitioner’s and other distillers’ lawful interstate business activities.
A review of the specific statutory mandates in question reveals the particular source of the constitutional problem to be remedied by an appropriate construction. The statutory provision particularly requiring affirmation (Alcoholic Beverage Control Law § 101-b [3] [d]) promotes the legislative purpose of securing liquor prices to domestic wholesalers and retailers which are as low as prices offered elsewhere in the country, creates no impediment to interstate commerce in liquor products and, as such, does not on its face suffer any constitutional infirmity. (Seagram & Sons v Hostetter, supra, at p 43; contrast, United States Brewers Assn. v Healy, supra.)[6] The specific provision prohibiting rebates, allowances and other inducements to *502 domestic wholesalers and retailers (§ 101-b [2] [b]) furthers the legitimate interest in avoiding, within this State, fictitious list prices and “special deals” to favored purchasers (see, L 1942, ch 899, Governor’s Bill Jacket, pp 124, 136) and, likewise, effectuates no unconstitutional interference with commerce outside this State.
The conclusion is different, however, for the provision which requires that the affirmed lowest prices in New York reflect all rebates, allowances and other inducements offered or given to wholesalers in other states. (§ 101-b [3] [g].) In effect, this provision, as strictly construed, defines “lowest price” in this State as the lowest price elsewhere minus the value of any such allowances — even if those allowances were offered in New York as well, but refused to respondent under the statutory prohibition. It is this definitional mandate, thus interpreted, which triggers the vicious cycle of reductions on affirmed lowest prices both outside as well as inside this State. It is this computation which runs afoul of the Commerce Clause. It necessarily places suppliers, such as petitioner, in the position of being unable to satisfy the lowest price requirements of the other states unless they cease providing any rebates, allowances or other inducements in all the other affirmation states which do permit them, or unless every one of those states decides to acquiesce in New York’s lower affirmed prices.
The legislative purpose of insuring for New York purchasers equality in real prices, rather than in fictional list prices which might effectively be reduced by discounts and other inducements offered to wholesalers elsewhere, is a legitimate and valid one. But, as the statutory provision was construed by respondent, the inevitable interference with interstate commerce is too drastic a measure. Plainly, the interest involved can be adequately promoted with a lesser impact on activities in other states. (Cf. A&P Tea Co. v Cottrell, supra, at pp 376-377; Pike v Bruce Church, supra, at p 142.)
To avoid the constitutional infirmity addressed above and, concurrently, serve the legislative purpose to the extent possible within that limitation, Alcoholic Beverage Control Law § 101-b (3) (g) should be construed to require that the “lowest price” be computed by making appropriate reductions to reflect all additional discounts, rebates, allowances, and any other inducements offered or given elsewhere, except those which are similarly offered to wholesalers in this State but not permitted by the State Liquor Authority as violative of section 101-b (2) (b), as well as those, of course, which are lawfully given to wholesalers *503 here. Hence, suppliers should be required to offer in New York both the lowest prices and the allowances or other inducements provided elsewhere. If the Legislature and, concomitantly, respondent disallow the granting of such allowances or inducements to New York wholesalers, suppliers must, of course, abide by the disallowance but should be required still to provide those same lowest prices. Suppliers should not be forced to lower those prices further in this State — below that which is charged in other affirmation states — thereby creating unavoidable difficulties for their businesses in those states when, like petitioner here, the suppliers are willing to provide the very same benefits to wholesalers in this State as elsewhere, but do not do so only because precluded by New York law.
Such a construction of the statutory provision preserves the essential elements of the affirmation statutory scheme and would not appear substantially to weaken its lawful effect. The predominant legislative purpose of insuring the de facto lowest prices for New York purchasers and avoiding “fictional list prices” actually reduced by “special deals” would seem still to be served by requiring that all discounts, rebates, allowances and other inducements provided elsewhere — which would otherwise have reduced the lowest prices to be affirmed in this State — must be offered in New York as well, by submission to the State Liquor Authority for approval or disapproval pursuant to Alcoholic Beverage Control Law § 101-b (2) (b).
Accordingly, I would vacate respondent’s determination and adopt the foregoing statutory construction.
Chief Judge Wachtler and Judges Meyer and Simons concur with Judge Kaye; Judge Jasen dissents and votes to reverse in a separate opinion; Judge Alexander taking no part.
Judgment affirmed, with costs.

. Alcoholic Beverage Control Law § 101-b (3) (a) and (d) provides in pertinent part:

. Alcoholic Beverage Control Law § 101-b (2) (b) provides:

. Alcoholic Beverage Control Law § 101-b (3) (g) provides in pertinent part: “(g) In determining the lowest price for which any item of liquor was sold in any other state or in the District of Columbia, or to any state (or state agency) which owns and operates retail liquor stores, appropriate reductions shall be made to reflect all discounts in excess of those to be in effect under such schedule, and all rebates, free goods, allowances and other inducements of any kind whatsoever offered or given to any such wholesaler or state (or state agency) as the case may be, purchasing such item in such other state or in the District of Columbia; provided that nothing contained in paragraphs (d) and (e) of this subdivision shall prevent differentials in price which make only due allowance for differences in state taxes and fees, and in the actual cost of delivery”. This statutory provision, intended to preclude fictitious list prices which were disregarded in practice by means of granting discounts to favored customers, was not in effect at the time of Seagram. It was not enacted until 1967, when the Legislature amended the affirmation law to make current prices elsewhere the reference for lowest prices. (See, L 1967, ch 798.)

. There are approximately 20 so-called “affirmation states” which have laws requiring distillers to “affirm” that the prices at which they sell brands to wholesalers in the state be no higher than the lowest prices at which they sell the same brands elsewhere during that period of time. The affirmation statutes have been patterned after New York’s, but the others do not contain what is apparently unique to this State, a proscription against promotional or other allowances of any kind whatsoever.

. Section 2 of the 21st Amendment provides: “The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.”

. I agree with the majority that the holding in Healy is not dispositive of this case and does not mandate the invalidation of this State’s affirmation statutory scheme in its entirety. The Supreme Court’s affirmance in Healy was without opinion and, therefore, its reasons for upholding the Second Circuit’s decision that Connecticut’s affirmation requirements were unconstitutional cannot be determined. Moreover, the statute in Healy was found specifically to be protectionist and discriminatory in purpose — especially evident in that statute’s application only to neighboring states. Nevertheless, the general principles of the Federal Commerce Clause and the 21st Amendment were thoughtfully and correctly outlined in Healy, and their application to this case cannot be denied and indeed, in my view, mandate the conclusion that the determination here in question is unconstitutional.