**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Monroe CAINE, Kenneth Fino and David Ratke, Defendants-Appellants.**

**No. 504, Docket 35092.**

United States Court of Appeals, Second Circuit.

Argued Jan. 29, 1971.

Decided April 27, 1971.

Milton A. Bass, New York City (Bass
& Ullman, New York City, on the brief),
for defendants-appellants.

John R. Wing, Asst. U. S. Atty.
(Whitney North Seymour, Jr., U. S.
Atty., for the Southern District of New
York, N. Y., Arthur A. Munisteri, Asst.
U. S. Atty., on the brief), for plaintiff-
appellee.

Before WATERMAN, MOORE and
FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Monroe Caine, Kenneth Fino and Dav-
id Ratke appeal from convictions of vio-
lating the federal mail and wire fraud
statutes, 18 U.S.C. §§ 1341, 1343. Ap-
pellants were found guilty on 72 counts
of an 85-count indictment after a 12-day
jury trial in the United States District
Court for the Southern District of New
York before Walter R. Mansfield, J.
Caine and Ratke were each sentenced to
concurrent four-year prison terms and
were fined $2,000 plus one-third of the
costs of prosecution. Fino received con-
current one-year terms and a $1,000
fine, and was ordered to pay one-third
of the prosecution costs.

The federal mail and wire fraud stat-
utes provide, in relevant part, criminal
sanctions against persons who, "having
devised or intending to devise any
scheme or artifice to defraud," use the
mails or interstate telegraph facilities in
furtherance of such a scheme. A short
outline of the fraudulent scheme in the
present case, as the jury was entitled to
find it, is as follows. Defendants
formed the Sperry Dynamics Corpora-
tion in 1964 in order to market the
"Sperry Unitron," a device for increas-
ing gasoline mileage in automobiles.
The corporation embarked on a massive
advertising campaign, replete with ex-
orbitant and unjustified claims for its
product. The advertisement stated, for
example, that the Unitron was a "new
invention by one of America's leading
scientists (co-developer of synthetic
tires and power brakes)," although the
inventor was relatively unknown and ap-
parently worked out of a "laboratory" in
his garage. Similarly, the advertise-
ment stated that laboratory tests had
proved that the Unitron would enable
the purchaser to get up to 33 to 37 miles
per gallon, while both appellant-initiated
and other tests showed that the Unitron
provided no real improvement in fuel
economy.

The advertisement contained errors of
omission as well as those of commission.
There was no mention that the Unitron
was actually a can of engine detergent
which needed to be replaced with every
tankful of gas rather than a solid device
which would not need replenishment.
Nor did the advertisement indicate that
the solid instrument shipped along with
the fluid was merely a standard gasoline
filter.

Finally, there was evidence of fraud
in appellants' administration of the en-
terprise. Customers failed to receive
their Unitron, even after their checks
were deposited in Sperry's account, and
they wrote up to nine complaint letters.
Likewise, many claims for refunds were
never satisfied.

I.

Appellants' primary challenge to
their convictions is that the court im-
properly permitted introduction of evi-
dence that Sperry had failed to give re-
funds as promised in its advertisement.
The issue arose early in the trial when
the Government attempted to have a
witness testify that, although he had re-
turned the Unitron as instructed in the
advertisement, he had never received a
refund. Defense counsel objected and a
lengthy colloquy ensued. Defense coun-
sel argued that neither the indictment
nor the bill of particulars charged the
failure to pay refunds as a part of the
fraudulent scheme. After discussion of
various practical considerations, some of
which will be mentioned below, the court

ruled such evidence admissible under the following language of the indictment:

It was further a part of said scheme * * * that the said advertising, as the defendants well knew, would contain false, fraudulent and misleading statements * * * including *among others* * * *. [Emphasis added.]

Thereafter, many government witnesses testified that they had not received refunds.

Citing United States v. Pope, 189 F. Supp. 12, 25–26 (S.D.N.Y.1960), appellants contend in this court that the admission of the evidence respecting refunds requires reversal. In *Pope*, the defendant moved to strike the words "among other things" from an indictment, and the court granted the motion. It reasoned that the words constituted an impermissible delegation to the prosecution of authority to enlarge the charges contained in the indictment:

A specific charge made by the grand jury may itself fail for lack of proof and yet, if the prosecution may augment the charges under the all-inclusive "among other things," the defendants may finally be prosecuted and convicted on charges of falsity in the statements not considered by the grand jury or, if considered, may have been rejected by it.

*Id.* at 26. Appellants claim that the same rationale should govern here.

In reply, the Government distinguishes *Pope*. It points out that the indictment in that case charged the making of false statements in proxy solicitations and reports to the Securities and Exchange Commission, while the gist of the charge against these defendants is the devising of a *scheme* to defraud, made criminal when the mails or interstate wires were used to pursue it. Viewing the failure to make refunds as only one of the many ways in which the scheme was carried out, the Government contends that the specification in the indictment here of certain means of carrying out the scheme did not preclude proof of others under the "among others" language. The Government also claims that the very judge who decided *Pope* recognized this distinction in United States v. Mayo, 230 F.Supp. 85 (S.D. N.Y.1964).

The Government's argument is not without force, but we need not decide whether it would carry the day. The holding of *Pope* was that the surplus language there should be stricken from the indictment. Even if we were to agree that the district court in this case could properly have stricken "among others" from the instant indictment on the authority of *Pope*, no such motion was made. We are faced instead with the different question whether, absent such a motion, the admission at trial of evidence as to refunds requires reversal of appellants' convictions. We conclude that it does not.

The decision in *Pope* appears to have had two bases. First, it was an effort to protect a defendant from being surprised at trial by evidence on charges for which he had justifiably not prepared. In the present case, however, appellants can hardly claim that introduction of evidence concerning refunds constituted "surprise," much less prejudicial surprise. Rather, appellants themselves had in readiness 7,000 refund checks to show their good faith and found several witnesses to testify in their behalf on this issue. Likewise, it appears that the Government verbally advised earlier employed defense counsel that it planned to raise the refund issue. Finally, the absence of surprise is highlighted by appellants' failure to request a continuance when the court ruled the evidence admissible.

The second basis of the holding in *Pope* was to assure that a defendant is not convicted of charges either rejected or not considered by the grand jury. In the present case the grand jury obviously considered defendants' entire advertisement, and listed 12 of the false ad-

vertising claims in addition to using the phrase "among others." The grand jury's failure specifically to mention fraud with respect to refunds was most likely due to the belief that further spelling out of defendants' fraudulent scheme was redundant. Given the substantial evidence mustered on the point at trial, it is particularly unlikely that the grand jury consciously rejected such a charge. Cf. United States v. Silverman, 430 F.2d 106, 109–112 (2d Cir. 1970). Furthermore, it is clear that the evidence in question was legally admissible for at least some purposes, e. g., with respect to the issue of appellants' fraudulent intent. See, e. g., United States v. Kaplan, 416 F.2d 103 (2d Cir. 1969); United States v. Deaton, 381 F. 2d 114, 117–118 (2d Cir. 1967).

On this record and in this procedural context, we hold that the admission of evidence concerning appellants' failure to pay refunds as advertised was not reversible error. Consonant with our discussion above, we expressly limit our holding to the facts of the present case.

## II.

■ Appellants' other arguments do not merit extended discussion. Appellants challenge the trial court's charge to the jury on the ground that it failed adequately to emphasize that they must knowingly have made false representations and "[i]n effect * * * equated false and misleading representations with fraud. * * *" A brief summary of the relevant portions of the court's charge belies this contention. The court first stated that:

In order to find a defendant guilty * * * you must first find with respect to each count that the government has established beyond a reasonable doubt, first, that the defendant wilfully, knowingly and intentionally devised or became a party to the alleged scheme or artifice to defraud.

It then proceeded to define a scheme to defraud but soon thereafter thoroughly stated the content of the necessary finding:

Intent to defraud means an intent and purpose to deceive others. A fraudulent intent of course cannot be presumed. If you found that any untrue representations were made by a defendant in good faith or in the belief that they were true, he could not be found guilty of fraud.

Accordingly, we can hardly find that the trial court failed adequately to charge the jury on this issue.

■ Appellants also press the related point that there was insufficient evidence of fraud to support conviction. The evidence with respect to Caine and Fino, ranging from verbal admissions that the Unitron was "worthless" to discussions of ways to rig a test so as to produce favorable results, is close to overwhelming. And given the fact that after a jury verdict we must view the evidence most favorably to the Government and indulge all permissible inferences in its favor, United States v. Hall, 346 F.2d 875, 881–882 (2d Cir.), cert. denied 382 U.S. 910, 86 S.Ct. 250, 15 L. Ed.2d 161 (1965), there is sufficient evidence in Ratke's case as well. To begin with, Ratke's position in a three-man, one-product, one-advertisement operation supports an inference of knowledge on his part that the scheme was fraudulent. Likewise, Ratke's rejection of advice to clear the advertisement with the Better Business Bureau because he would "rather not get involved" suggests knowledge of the advertisement's inaccuracies. Finally, Ratke was present when Fino described the Unitron as "worthless" and he was subsequently admonished by a bank officer that the fluid "didn't do any good."

■ We have considered appellants' other challenges, viz., that the trial court erred in refusing to permit introduction of a patent relative to the Unitron and that it improperly marshalled the evidence for the jury. We find no error in either respect.

Affirmed.