**UNITED STATES of America,**

v.

**John FASCIANA and Joseph Amato, Defendants.**

**No. S301CR00058LTS.**

United States District Court, S.D. New York.

Sept. 17, 2002.

James B. Comey, United States Attorney for the Southern District of New York, by Peter G. Neiman, Justin S. Weddle, New York City, for the United States.

Law Offices of Robert Hill Schwartz, by Robert Hill Schwartz, New York City, for defendant Joseph Amato.

Newman & Greenberg, by Gustave Newman, New York City, for defendant John Fasciana.

## OPINION AND ORDER

SWAIN, Judge.

In this mail, wire fraud and conspiracy case, the Government has indicated its intention to proffer at trial evidence concerning Defendant John Fasciana's alleged mishandling of a $4,136 check (the "$4,136 check") made payable to Thomson McKinnon Securities Inc. ("Thomson McKinnon"). Defendant Fasciana seeks to preclude the introduction of such evidence, contending that its admission would constitute a constructive amendment of Counts Seven and Twelve of the Third Superseding Indictment (the "Indictment").

Defendant Fasciana has also objected to the Government's stated intention to offer

at trial evidence concerning (a) an alleged attempted conversion of a check in the amount of $4,921 [1] payable to Thomson McKinnon, (b) an alleged alteration and mishandling of a check issued to Fasciana's former law firm by an entity referred to as The Guild Group, and (c) an alleged effort by Fasciana to defraud insurers in connection with certain acts charged in the Indictment. Fasciana argues that the proffered evidence should not be admitted under Rule 404(b) of the Federal Rules of Evidence.

The Court has considered thoroughly all of the parties' written submissions and arguments in connection with these applications. For the following reasons, Defendant Fasciana's application to preclude the introduction of evidence concerning the $4,136 check is denied and his Rule 404(b) application is granted in part and denied in part.

The general nature and background of the charges in this case are outlined in an earlier opinion, *United States v. Reddy, Fasciana and Amato*, 190 F.Supp.2d 558 (S.D.N.Y.2002) ("*Fasciana I*"), familiarity with which is assumed.

*The $4,136 Check*

By letter dated August 13, 2002, the Government notified the Court and Defendant Fasciana that it intended to introduce trial testimony concerning the $4,136 check in support of its contention that Fasciana and his co-conspirators sought and obtained payments from EDS on the basis of fraudulent representations that certain "Pre–Acquisition Receivables" had been collected.[2] Asserting that this letter

constituted the first revelation that the mail and wire fraud charges set forth in Counts Seven and Twelve of the Indictment were premised on anything other than a contention that Fasciana and his co-conspirators had disguised post-acquisition receivables as Pre–Acquisition Receivables, Fasciana moves to preclude the Government's evidentiary proffer, contending that to permit introduction of the evidence at trial would effect a constructive amendment of Counts Seven and Twelve of the Indictment.

Counts Seven and Twelve charge Fasciana with mail and wire fraud, respectively, based on the transmission to EDS of demands for payment of a $93,527.92 sum. Fasciana acknowledges that the demand was based, in part, on a representation that the proceeds of the $4,136 check constituted Pre–Acquisition Receivables. The $4,136 check is not, however, specifically mentioned in the Indictment. The Government proffers that Fasciana obtained the $4,136 check, deposited it his trust account, then signed a check for $4,136 made payable to EDS. The Government further proffers that Fasciana caused a cover letter transmitting the check to represent that the $4,136 check was attributable to the collection of Pre–Acquisition Receivables. *See* Government's Letter dated Sept. 9, 2002. Fasciana argues that a fraud conviction based on an alleged misrepresentation of the nature of those proceeds would be outside the scope of the charged fraud which, according to Fasciana, is limited in relevant part to false representations that receipts for post-ac-

---

1. The parties' letter briefs concerning this check variously refer to a $4,911 check and a $4,921 check. The context of the submissions make clear that the $4,911 check and the $4,921 checks are the same.

2. As explained in *Fasciana I*, Defendants are charged with participating in conspiratorial and fraudulent activity that included misrep-

resentations as to the collection of receivables relating to work pre-dating EDS's acquisition of FACS Corporation International ("FCI"); the alleged misrepresentations triggered contingent payments under a provision of the EDS–FCI purchase agreement. *See Fasciana I*, 190 F.Supp 2d at 564–565; Indictment, ¶ 30.

quisition work were attributable to Pre–Acquisition Receivables.

■■■ The Fifth Amendment to the Constitution of the United States guarantees the right to indictment by a grand jury on felony charges. Thus, "after an indictment has been returned its charges may not be broadened except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 215–16, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). A court "cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Id.*, 361 U.S. at 217, 80 S.Ct. 270.

A constructive amendment of an indictment 'occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them.' *United States v. Zingaro*, 858 F.2d 94, 98 (2d Cir.1988) (quoting *Gaither v. United States*, 413 F.2d 1061, 1071 (D.C.Cir.1969)). As such, a constructive amendment is a per se violation of the Fifth Amendment. *United States v. Delano*, 55 F.3d 720, 729 (2d Cir.1995). 'To prevail on a constructive amendment claim, a defendant must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment.' *United States v. Frank*, 156 F.3d 332, 337 (2d Cir.1998) (per curiam) (citing *Zingaro*, 858 F.2d at 98). 'In determining whether an "essential element" of the offense has been modified, moreover, we have 'consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial.' *Delano*, 55 F.3d at 729 (quoting *United States v. Patino*, 962 F.2d 263, 266 (2d Cir.1992) (internal quotations omitted)). Moreover, in the context of a conspiracy charge, '[t]he Government need not … set out with precision each and every act committed … in furtherance of the conspiracy,' particularly where the acts proven at trial were part of the 'core of the overall scheme and in furtherance of that scheme.' *United States v. Cohen*, 518 F.2d 727, 733 (2d Cir.1975). 'It is clear the Government may offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy.' *United States v. Bagaric*, 706 F.2d 42, 64 (2d Cir.1983), *abrogated on other grounds by Nat'l. Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). *United States v. LaSpina*, 299 F.3d 165, 181–182 (2d Cir.2002).

■■■ Fasciana cites paragraphs 30, 34(h)–(1) and 35(r)–(y) of the Indictment in support of his argument that proof relating to the $4,136 check would go beyond the crimes charged in Counts Seven and Twelve of the Indictment. Counts Seven and Twelve charge defendants Reddy and Fasciana with mail and wire fraud, respectively, in connection with the mailing and faxing of a 1998 demand for the payment of $93,527.92.

A note as to the structure of the Indictment is in order at the outset. Paragraphs 1 through 35 comprise Count One of the Indictment, charging the three named Defendants with a conspiracy to commit mail and wire fraud. Paragraphs 36 and 37, incorporating by reference paragraphs 1 though 29 and 33, introduce Counts Two through Ten, which charge specific Defendants with committing specific acts of mail fraud "for the purpose of executing the fraud scheme set forth in Count One." Paragraphs 38 and 39, incorporating by reference paragraphs 1 through 29 and 33, introduce Counts Eleven through Thirteen, which charge specific

Defendants with committing specific acts of wire fraud "for the purpose of executing the fraud scheme set forth in Count One."

The Indictment paragraphs specifically incorporated into Counts Seven and Twelve do not include any of the allegations detailing the 1998 Pre–Acquisition Receivables elements of the charged conspiracy. They do include the Indictment's general description of "The Scheme to Defraud EDS" as one spanning the period from in or about the fall of 1995 through in or about June 1999 and consisting of a scheme "to defraud EDS by inducing EDS to make various contingent payments to [certain persons] . . . when, in fact, such payments were not due and owing." Indictment, ¶ 12. The $93,527.92 demand was for one of the contingent payments referred to in paragraph 12. Nothing in paragraph 12 or in any of the other paragraphs specifically incorporated into Counts Seven and Twelve purports to characterize or provide details of the alleged Pre–Acquisition Receivables element of the charged scheme, much less to limit the nature of that scheme to the mischaracterization of post-acquisition receivables. Paragraph 12 makes clear the core nature of the fraud charged—defrauding EDS by inducing EDS to make payments that were not due and owing. Introduction of evidence that a misrepresentation as to the nature or source of the proceeds of the $4,136 check underlay the allegedly fraudulent $93,527.92 demand is neither inconsistent with nor broader than the allegations laid out in Counts Seven and Twelve and, thus, does not facially appear to be a constructive amendment of the charges and allegations set forth in those Counts of the Indictment.

As noted above, however, Fasciana focuses on paragraphs 30, 34(h)–(1) and 35(r)–(y) of the Indictment in arguing constructive amendment. None of these paragraphs, which comprise Count One's general description of the "1998 Payments for the Collection of Pre–Acquisition Receivables" (¶ 30), the portion of Count One's "Means and Methods" allegations relating to those payments (¶¶ 34(h)–(1)), and the portion of Count One's "Overt Acts" allegations relating to those payments (¶¶ 35(r)–(y)) is incorporated by reference in Count Seven or Count Twelve. Although the analytical basis for Fasciana's invocation of these particular provisions of the Indictment is far from clear (perhaps Fasciana considers reliance on these allegations as narrowing the scope of Counts Seven and Twelve appropriate because those Counts allege that the criminal activity charged was undertaken "for the purpose of executing the fraud scheme set forth in Count One above" [3], such that a holistic view of the scope of Count One is a necessary element of interpretation of the substantive charges), the Court has considered carefully whether the allegations in the cited paragraphs effectively narrow the scope of the criminal activity charged such that introduction of the evidenced relating to the $4,136 check would constructively amend the Indictment. The Court concludes, for the following reasons, that it would not.

Paragraph 30 of the Indictment alleges, *inter alia*, that:

By late 1997, more than $350,000 in Pre–Acquisition Receivables remained uncollected, and a corresponding amount remained in escrow awaiting payment to the FCI Shareholders upon collection of the Pre–Acquisition Receivables. From in or about December 1997 up to and including in or about December 1998, MICHAEL REDDY and JOHN FASCIANA, the defendants, and co-conspirators known and unknown to the Grand Jury, deceived EDS into believing that

---

**3.** *See* Indictment, ¶¶ 37, 39.

they had collected these Pre–Acquisition Receivables, when in fact, they had not. REDDY and FASCIANA accomplished this by laundering through Fasciana's bank accounts more than $350,000 in funds EDS received from sources other than the collection of Pre–Acquisition Receivables, including from post-acquisition work performed for clients of EDS, and then representing to EDS that the funds were in fact attributable to the collection of Pre–Acquisition Receivables.

Indictment, ¶ 30.

Paragraphs 34(h)–(1) of the Indictment charge means and methods of the aspects of the alleged conspiracy relating to the "1998 Payments for the Collection of Pre–Acquisition Receivables." Paragraphs 34(h)–(1) charge, *inter alia,* that

> (h) EDS often received payment for post-acquisition work done by the GFMG in the form of checks. EDS's standard invoice instructed that checks be sent directly to a lock box at a bank in North Carolina. (i) In late 1997 or 1998, a co-conspirator . . . began altering invoices such that certain EDS post-acquisition clients instead mailed checks for work unrelated to the Pre–Acquisition Receivables to EDS's offices in Manhattan. [The co-conspirator] then sent such checks to the law offices of John Fasciana . . . . . (j) JOHN FASCIA-NA, the defendant, caused the checks to be deposited into accounts he controlled. FASCIANA then wrote checks payable to EDS drawn on his accounts, often in amounts matching amounts owed by third parties on certain of the outstanding Pre–Acquisition Receivables . . . . (k) MICHAEL REDDY . . . falsely represented to EDS that all the checks from JOHN FASCIANA . . . represented funds collected on Pre–Acquisition Receivables when . . . the checks generally represented funds collected from other sources, including from post-acquisition

work performed for an EDS client. (1) Based on that false representation, EDS in June and December, 1998, caused payments totaling more than $350,000 to be made to the FCI Shareholders.

Indictment, ¶ 34(h)–(1).

Paragraphs 35(r)–(y) relate to overt acts in furtherance of the 1998 Payments for the Collection of Pre–Acquisition Receivables aspect of the conspiracy charged in the Indictment. Paragraph 35(r) charges that Fasciana met in January 1998 with co-conspirators "to discuss a scheme to make it appear to EDS that funds EDS received for post-acquisition work were instead payments on uncollected Pre–Acquisition Receivables." Paragraphs 35(s) through (u) charge that a co-conspirator mailed two Chase Manhattan checks, in the amounts of $70,156.61 and $36,503.33, to Fasciana, who deposited them into his attorney trust account and subsequently drew three checks from his attorney trust account, payable to EDS, in the amounts of $36,503.33, $24,171.61 and $45,895. Paragraph 35(w) charges that the co-conspirator "caused certain of the checks provided by JOHN FASCIANA . . . to be transmitted by mail from EDS's New York, New York to a lockbox in EDS's name . . . ." *Id.* Paragraphs 35(x) and (y) discuss the $93,527.92 demand that is the subject of Counts Seven and Twelve, charging that Reddy faxed and mailed a letter "falsely representing that EDS had collected $93,527.92 in Pre–Acquisition Receivables, and demanding under the Purchase Agreement that EDS pay that amount to the FCI shareholders," and that EDS subsequently wired the demanded amount to Fasciana for distribution to the FCI shareholders. Indictment, ¶ 35(r)–(y).

Defendant Fasciana argues that nothing in these allegations relates to the $4,136 check allegedly used to misrepresent the collection of Pre–Acquisition Receivables and that they instead charge a scheme

limited to that described in paragraph 35(r), namely one to make it appear to EDS that funds EDS received for post-acquisition work were instead payments on Pre–Acquisition Receivables.

 As noted above, Count One of the Indictment charges a conspiracy to commit mail and wire fraud, alleging a 1995–1999 scheme "to defraud EDS by inducing EDS to make various contingent payments to the FCI Shareholders and the Key Employees when, in truth and in fact, such payments were not due and owing." Indictment, ¶ 12. *See also United States v. Reddy, Fasciana and Amato,* 2002 WL 1334823, at *8 (S.D.N.Y.2002) ("the Indictment charges Defendants with defrauding EDS by making false representations, false book entries or other misleading accounting techniques to induce EDS to make the payments that allegedly should not have been made"). In order to prove mail fraud under 18 U.S.C. § 1341, the Government must prove: (1) a scheme to defraud (2) involving money or property and (3) use of the mails to further that scheme. *See United States v. Wallach,* 935 F.2d 445, 461 (2d Cir.1991). In order to prove wire fraud under 18 U.S.C. § 1343, the Government must prove a defendant was one of the participants in a fraudulent scheme which was furthered by the use of interstate transmission facilities. *See United States v. Corey,* 566 F.2d 429, 430 n. 2 (2d Cir.1977) (citing *United States v. Houlihan,* 332 F.2d 8, 13 (2d Cir.), *cert. denied,* 379 U.S. 828, 85 S.Ct. 56, 13 L.Ed.2d 37 (1964)).

 The charged conspiracy is not limited to the Pre–Acquisition Receivables element of the alleged scheme and, indeed, the cited aspects of the Indictment are not themselves limited to the misrepresentation of post-acquisition receivables as Pre–

Acquisition ones. Paragraph 30 alleges that the 1998 Pre–Acquisition Receivables activity consisted of deceiving "EDS into believing that [Reddy and Fasciana] had collected ... Pre–Acquisition Receivables, when in fact they had not," and that the deceit was "accomplished ... by laundering through FASCIANA's bank accounts ... funds EDS received from sources other than the collection of Pre–Acquisition Receivables, *including* from post-acquisition work performed for clients of EDS, and then representing to EDS that the funds were in fact attributable to the collection of Pre–Acquisition Receivables." (Emphasis added.) Paragraph 34's "Means and Methods" allegations are not exclusive (the paragraph begins, "[a]mong the means and methods by which ... the defendants ... carried out the objects of the conspiracy") and clearly are set forth as descriptions of methods rather than descriptions of the scope of the conspiracy itself. Paragraph 35's catalogue of Overt Acts is again explicitly non-exclusive [4] and, in any event, specifically alleges that the $93,527.92 demand for payment (which Fasciana concedes was premised in part on the $4,136 check) was fraudulent.

Having reviewed carefully the entire Indictment, with particular attention to those portions cited by Defendant Fasciana, the Court finds that the essential relevant element of the criminality charged in Counts Seven and Twelve is the false representation that the intended recipients of the demanded contingent payment were entitled to them because Pre–Acquisition Receivables had been collected. Misrepresentations as to the source or nature of the $4,136 check in support of the demand are within the scope of this charged scheme. Thus, even taking into account the specifics of Paragraphs 30, 34 and 35 of the

---

4. The law permits the Government to offer proof of overt acts not alleged in an indictment if the acts are within the scope of the charged conspiracy. *LaSpina,* 299 F.3d at 182.

Indictment, it is clear that the proffer concerning the $4,136 check falls squarely within the scope of the fraud charges in the Indictment and would not alter any essential element of the offenses charged. *Cf. LaSpina,* 299 F.3d at 182; *see United States v. Patino,* 962 F.2d 263, 266 (2d Cir.1992) ("[A]n impermissible alteration of the charge must affect an essential element of the offense, ... and we have 'consistently permitted significant flexibility in proof, provided that the defendant was given notice of the 'core of criminality' to be proven at trial.'" (Citations omitted.)). The charge is sufficiently inclusive to provide notice that the Government intended to prove the conspiracy using evidence other than evidence purporting to show misuse of funds relating to post-acquisition work. *See United States v. Frank,* 156 F.3d 332, 337 (2d Cir.1998) (no constructive amendment unless the proof at trial "so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment').

Defendant Fasciana contends that *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) and *United States v. Zingaro,* 858 F.2d 94 (2d Cir. 1988) compel a different conclusion. In *Stirone,* the indictment alleged that the defendant had interfered with interstate commerce through an extortion scheme involving importing sand into Pennsylvania for making concrete. At trial, the court allowed proof of interference with interstate commerce in steel that would have been produced in the steel mill constructed from concrete made with the imported sand. In reaching the conclusion that the proof at trial effected a constructive amendment, the Supreme Court examined the statute defining the crime and determined that "there are two elements of a Hobbs Act crime: interference with commerce and extortion." The Court further recognized that "[b]oth elements have to be charged.... The charge that interstate commerce is affected is critical since the Federal Government's jurisdiction of this crime rests only on that interference," and held "that when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another...." *Id.* 218, 80 S.Ct. 270. Turning to the indictment in that case, the *Stirone* Court found that it could not "fairly be read as charging interference with movements of steel" and thus, "even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened," the steel-related evidence effected an improper constructive amendment. *Id.* 361 U.S. at 217–218, 80 S.Ct. 270. Here, by contrast, the Indictment charges a scheme centered on obtaining contingent payments that had not actually been earned, including by misrepresenting the nature of certain receipts. The particular counts in question identify the amounts allegedly misrepresented; they certainly can fairly be read to comprehend a charge of misrepresentation of the $4,136 check as a Pre–Acquisition Receipt.

In *Zingaro,* the Government brought a RICO indictment charging the defendant with certain predicate RICO acts. The indictment paragraphs at issue in *Zingaro* charged the predicate acts of extortionate extensions of credit (i.e., loansharking) and collection of unlawful debt in terms tied specifically to loans in connection with certain gambling activities in social clubs in Yonkers, New York.[5] The Second Circuit

---

**5.** The specific indictment paragraph charging the loansharking predicate act was captioned "Yonkers Social Club Loansharking" and described only that gambling-related activity; the paragraph concerning the collection of

therefore found an illegal constructive amendment to the indictment when evidence was introduced in support of the loansharking and debt collection charges that related to a loan for renovation of a restaurant in the Bronx. The Bronx loan fell "entirely outside the criminal 'scheme' alleged against Zingaro." *Zingaro*, 858 F.2d at 103. In the instant case, and as shown above, the Indictment does not charge the relevant crimes in terms limited to the substitution of post-acquisition revenues for Pre–Acquisition receipts, although it provides details of such alleged transactions as part of its account of means and methods and specifications of overt acts in connection with the conspiracy and substantive mail and wire fraud counts. The allegations concerning use of the $4,136 check in support of an improper demand for payment of a contingent payment in respect of Pre–Acquisition Receivables is clearly of the same character as the acts specifically charged in the indictment. *Cf. id.* (comparing indictment in *Zingaro* with indictment in *United States v. Caine*,[6] where "an indictment charged that advertising promulgated by the defendants contained false statements, 'including among others' certain specified statements," and evidence concerning false statements about refunds that were not specifically identified in the indictment was allowed. "The [*Caine*] court concluded: 'The grand jury's failure specifically to mention fraud with respect to refunds was most likely due to the belief that further spelling out of defendants fraudulent scheme was redundant.' [*Caine*] at 457.").

For these reasons, that Court finds that proof concerning the $4,136 check should not be precluded as constituting a constructive amendment of the Indictment and Defendant Fasciana's motion for such preclusion is denied.

*The $4,921 and Guild Group Checks*

By letter dated August 2, 2002, the Government notified Defendants of its intent to offer at trial evidence that: (a) Defendant Fasciana defrauded another client, The Guild Group, in or about 1994 by altering a check presented to his former law firm by The Guild Group,[7] (b) that Fasciana participated in a failed scheme in 1998 to convert a check in the amount of $4,921 payable to Thomson McKinnon, (c) that Defendant Amato committed expense account fraud against EDS in 1998, and (d) that Fasciana participated in an effort to defraud insurers into providing insurance covering certain claims allegedly fraudulently booked in 1995 and 1997.

---

unlawful debts was captioned "Unlawful Debt Collection in Yonkers Social Clubs" and charged "the collection of unlawful debts, that is ... debts which were incurred and contracted in gambling activity" and described only the Yonkers social club gambling activities. *See Zingaro*, 858 F.2d at 101–102. Although one of the paragraphs referred both to usurious interest rates and gambling the Second Circuit held that, in light of the structure of the indictment, "the reference ... to both aspects of illegality carries no necessary or even likely implication that illegal debt collections ... other than from 'players' at the Yonkers social clubs were comprehended by the indictment. *Id.* at 102. Nor, in the context of that indictment, did use of the term "among the means" broaden the import of the sub-provisions of the paragraph alleging the illegal collection activities: "[t]he headings and particulars of the pertinent provisions of the indictment (including those relating to predicate acts and separate counts of gambling of which Zingaro was acquitted) give no inkling that he was charged with extortions unrelated to the activities of the Yonkers social clubs." *Id.* at 102–103.

**6.** 441 F.2d 454 (2d Cir.), *cert. denied*, 404 U.S. 827, 92 S.Ct. 59, 30 L.Ed.2d 55 (1971).

**7.** Defendant Fasciana asserts that the check in question was issued by Guild Concepts, Ltd., not The Guild Group. For purpose of this Opinion, the distinction is not material.

Fasciana has moved to preclude the Government from offering evidence concerning the Guild Group check and the $4,921 Thomson McKinnon check. Fasciana further requested that the Government provided a more detailed proffer concerning the alleged insurance fraud; the Government did so by letter dated September 9, 2002. Defendant Amato has not interposed any objections in response to the Government's August 2, 2002 notice.

■ Federal Rule of Evidence 404(b) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ...

Fed.R.Evid. 404(b). In the ·Second Circuit, "[w]e follow an inclusionary rule, allowing the admission of such evidence for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence." *United States v. Carboni,* 204 F.3d 39, 44 (2d Cir.2000) (citing *United States v. Inserra,* 34 F.3d 83, 89 (2d Cir.1994)). The district court has wide discretion in making this determination. *See id.* Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

■ The Second Circuit uses a three-part test to determine whether evidence of extrinsic acts is admissible under Rule 404(b). *See United States v. Mickens,* 926 F.2d 1323, 1328 (2d Cir.1991): such evidence is admissible *unless* it is introduced for the sole purpose of showing a defendant's bad character, it is not relevant under Rule 402, or it is overly prejudicial under Rule 403. *See id.,* at 1328.

*The $4,921 Thomson McKinnon Check*

The Government asserts that the $4,921 check is not being proffered for the sole purpose of showing Defendant Fasciana's bad character. Rather, the Government seeks to offer evidence concerning the check on the issues of intent, knowledge and absence of mistake. Defendant does not contest that such issues are disputed in this case. Thus, the pertinent questions are whether the evidence is relevant within the meaning of Federal Rules of Evidence 401 and Rule 402 and not unfairly prejudicial within the meaning of Rule 403.

Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.

The Government and Fasciana appear to agree that the $4,921 check was made payable to Thomson McKinnon, that it was issued by an Atlanta law firm, and that Fasciana deposited the check in his trust account. Fasciana represents that the check was for funds collected from garnishments filed against a former customer of Thomson McKinnon and that FCI had entered into a contract to acquire certain of Thomson McKinnon's assets prior to EDS's acquisition of FCI. The Government does not appear to dispute this. The Government and Fasciana, not surprisingly, disagree on everything else connected with Fasciana's handling of the $4,921 check. Fasciana contends that the proceeds of the check were legitimately the property of EDS and that his conduct with

respect to the check was not improper; the Government contends that Fasciana improperly deposited the check into his account and misrepresented its proceeds to EDS as the collection of Pre–Acquisition Receivables. Fasciana contends that the evidence should not be admitted because the Government's factual and legal arguments with respect to the propriety of his conduct are incorrect. The parties have each made proffers of the factual matters and legal analyses pertinent to their respective positions in this regard. Evidence concerning the check is clearly relevant to the disputed issues if Fasciana's conduct with respect to the check was improper, as posited by the Government; it seems that the evidence would not be relevant to the issues of intent, knowledge and/or absence of mistake if, as Fasciana contends, he handled the transaction properly.

 In the context of a Rule 404(b) proffer, it is not appropriate for a court to make credibility determinations, or weigh evidence, in connection with disputes as to whether the factual underpinnings of the proffer can be proven. Rather, "[s]uch questions of relevance conditioned on a fact are dealt with under Federal Rule of Evidence 104(b) ... [, which] provides: 'When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.' " *Huddleston v. United States*, 485 U.S. 681, 689–90, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). Furthermore, "[i]n determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. *The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional*

*fact ... by a preponderance of the evidence.*" *Id.* at 690, 108 S.Ct. 1496, 1501 (citation omitted; emphasis supplied). As the Second Circuit recently explained:

In *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Supreme Court described the role of the trial court in admitting evidence pursuant to Rule 404(b). The trial judge must instruct the jury to disregard such evidence if the proponent fails to prove, by a preponderance of the evidence, that the similar bad act occurred and was committed by the defendant. *See id.* at 689, 108 S.Ct. 1496; *United States v. Gilan*, 967 F.2d 776, 780 (2d Cir.1992). A trial court may, however, admit the evidence conditionally subject to proof that the defendant committed the other crime, allowing the proponent to 'connect it up later.' *Huddleston*, 485 U.S. at 690 n. 7, 108 S.Ct. 1496 (internal quotation marks omitted). Where the admission of 404(b) evidence is conditional, the Court in *Huddleston* made clear that '[i]t is, of course, not the responsibility of the judge sua sponte to insure that the foundation evidence is offered; the objector must move to strike the evidence if at the close of the trial the offeror has failed to satisfy the condition.' *Id.* (quoting 21 C. Wright & K. Graham, Federal Practice and Procedure § 5054, at 269–70 (1977)).

*United States v. Aleskerova*, 300 F.3d 286, 296 (2d Cir.2002). Having reviewed the Government's proffer concerning the evidence it will present in connection with the $4,921 check, the Court finds that conditional admission of the evidence as relevant is appropriate under Rules 104(b), 402 and 404(b), if the evidence is not excludable under Rule 403.

 Federal Rule of Evidence 403 permits the exclusion of relevant evidence "if its probative value is substantially out-

weighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. "Evidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir.1980).

According to the Government's letter dated September 9, 2002, the Government intends to present evidence that Fasciana deposited the $4,921 check in his trust account at about the same period of time that he deposited the $4,136 check (which was the subject of the preceding section of this Opinion) and that Fasciana and his alleged co-conspirators attempted to launder the $4,921 check in the same manner as the $4,136 check. The attempt failed, according to the Government, because the payor of the check discovered the deceit.

■ To the extent Fasciana contends that he did not know that other checks alleged to have been employed in the scheme were mischaracterized, evidence concerning the $4,921 check is admissible to show such knowledge. "Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged." *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir.1993) (citation omitted), *cert. denied*, 512 U.S. 1224, 114 S.Ct. 2717, 129 L.Ed.2d 842 (1994); *see also United States v. Mickens*, 926 F.2d 1323, 1329 (2d Cir.1991) (affirming admission of evidence of prior narcotics activity because it was "relevant to the second element of the money laundering charge, i.e., that [the defendant] knew that the laundered funds derived from an unlawful source"), *cert. denied*, 502 U.S. 1060, 112 S.Ct. 940, 117

L.Ed.2d 111 (1992); *United States v. Ramirez*, 894 F.2d 565, 568–69 (2d Cir.1990) (affirming admission of evidence of a different narcotics transaction to rebut defendant's claim that he did not know the contents of a package of contraband). Assuming that the Government makes good on its proffer concerning the illegitimacy of Fasciana's dealings with the check, the evidence is similarly probative of the issues of intent and absence of mistake. Fasciana has not demonstrated that the probative value of the proffered evidence is substantially outweighed by the risks of unfair prejudice, confusion or cumulation. Thus, under the inclusive standard of the Second Circuit, Defendant Fasciana's Rule 404(b) objection to the admission of the $4,921 check is overruled and the evidence will be admitted conditionally.

■ The Government also contends that the evidence concerning the $4,921 check is admissible as direct evidence of the charged crimes, without regard to Rule 404(b). The Government argues that the transactions were intertwined with, and form part of the story of, the conspiracy to deceive EDS concerning the Pre-Acquisition Receivables. *See Carboni*, 204 F.3d at 44. "Evidence of uncharged criminal activity is not considered other crimes evidence under Fed.R.Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir.1997) (internal quotation marks and indicators of alterations from the original omitted). In light of the Court's resolution of the Rule 404(b) question with respect to this evidence, it is not necessary for the Court to reach the broader question of admissibility

at this time, in advance of the opening of the proof.

### The Guild Group Check

 The Government asserts in its September 9, 2002 letter that Fasciana pressured the controller of The Guild Group, which was a former client of Fasciana's law firm, to pay an outstanding bill. The controller allegedly provided Fasciana with a post-dated check. Fasciana allegedly agreed to wait to cash the check because The Guild Group hoped to have sufficient funds to pay the check later. The Government proffers that Fasciana altered the check by changing the date and writing the controller's initials next to the date and deposited it earlier than the agreed time. According to the Government, Fasciana thereby "essentially stole" these "client funds by depositing them in improper fashion into bank accounts controlled by his law firm" and committed a fraud. When confronted by the controller, Fasciana allegedly confessed to misconduct. The Government contends that this alleged fraud was sufficiently similar to Fasciana's alleged mishandling of Chase checks payable to EDS (fraudulently characterizing their proceeds as Pre–Acquisition Receivables) to warrant admission of evidence concerning The Guild Group check pursuant to Rule 404(b), in aid of an inference that Fasciana's allegedly improper actions with respect to the Chase checks were taken knowingly.

Fasciana disputes the Government's version of what occurred in connection with the Guild Group check, asserting that The Guild Group owed Fasciana's firm significant sums of money, that Fasciana's firm held title to the check at the relevant time under New York law, that Fasciana did not confess to "misconduct" and that he cannot be accused fairly of fraud for depositing the check before the drawer of the check expected him to do so.

The Government argues that Fasciana is mistaken about the law concerning checks, asserting that a post-dated check is not negotiable until the date stated on the check (citing N.Y.U.C.C § 3–114)(2). The Government contends, if it establishes that Fasciana fraudulently altered The Guild Group check, "a jury could reasonably infer from Fasciana's knowing alteration and misappropriation of The Guild Group check that his similar theft of the Chase checks was also done knowingly and was not the product of mistake, inadvertence, or a good faith belief in his entitlement to the funds." *See* Government's Letter dated September 9, 2002 at 11.

As explained above, in determining whether evidence is admissible under Rule 404(b) courts in the Second Circuit look to whether the evidence is relevant and whether its probative value is outweighed substantially by risks of unfair prejudice, confusion and cumulation.

Assuming that the Government can carry its evidentiary burden with respect to the alleged fraudulent alteration, evidence concerning The Guild Group check is arguably relevant to the issue of Fasciana's knowledge that the other checks charged in the Indictment were mischaracterized as Pre–Acquisition Receivables, and/or to his intent or lack of mistake in dealing with other checks. The circumstances concerning The Guild Group check and the circumstances concerning the checks which were part of the alleged deception of EDS, however, are substantially different. The Government's proffer does not establish that Fasciana's alleged alteration of the check and its premature deposit are of the same character as the charged laundering of checks through his trust account. The two incidents appear related only in the most general sense—alleged handling of client funds in a manner inconsistent with the rights, instructions and/or expectations

of the client. The details of the alleged mishandling are quite different, however: with respect to the matters that are the subject of the Indictment Fasciana is alleged to have lied to a client regarding the source of funds underlying checks written on his trust account in order to obtain payments to which he and his co-conspirators were not otherwise entitled, whereas with respect to The Guild Group check Fasciana is alleged to have made a physical alteration enabling him to negotiate a check for his own account earlier than had been agreed by the client.

It appears to the Court that admission of evidence concerning The Guild Group check will lead to a confusion of the issues and unduly lengthen the trial while providing information that appears to be only tenuously connected to question of Fasciana's knowledge and intent with respect to the scheme charged in the Indictment. *See, e.g., United States v. Aboumoussallem,* 726 F.2d 906, 912 (2d Cir.1984) (recognizing the trial court has considerable latitude in balancing the Rule 403 factors, where the trial court determined that consideration of 404(b) evidence would amount to a trial within a trial risking jury confusion and unduly delaying trial). Because the Court finds that such risks outweigh substantially the probative value of the evidence relating to The Guild Group check, Defendant Fasciana's objection to the Government's Rule 404(b) proffer with respect to that evidence is sustained.

### CONCLUSION

In light of all of the foregoing, Defendant Fasciana's constructive amendment objection to the Government's proffer of evidence concerning the $4,136 is denied, Fasciana's application to preclude a Rule 404(b) proffer of evidence concerning the $4,921 check is denied and such evidence will conditionally be admitted, and Fasciana's application to preclude a Rule 404(b)

proffer of evidence concerning The Guild Group check is granted.

SO ORDERED.